UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Bryka, LLC,                          :
                                     :
                                     :
       Plaintiff,                    :
                                     :
v.                                   :   Case No. 3:20-cv-00484(RNC)
                                     :
Holt Integrated Circuits, Inc.,     :
                                     :
       Defendant.                    :
_____  :
                                     :
W.G. Holt, Inc dba Holt              :
Integrated Circuits,                 :
                                     :
       Counterclaimant,              :
v.                                   :
                                     :
Bryka, LLC,                          :
                                     :
       Counterclaim Defendant.       :


RULING AND ORDER

Plaintiff Bryka, LLC brings this diversity case against defendant Holt Integrated Circuits, Inc. seeking money damages for: (1) a violation of the Connecticut Franchise Act ("CFA"), Conn. Gen. Stat. § 42-133h, et seq., (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) unjust enrichment, (5) tortious interference with business relations, and (6) a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, et seq. Defendant has moved for summary judgment on plaintiff's claims and its own counterclaim seeking damages for breach of contract.

For reasons that follow, the motion is granted in full.

I.   Facts

The parties' International Distribution Agreement
("Distribution Agreement") and Local Rule 56(a) Statements show
the following.  Defendant manufactures parts used in aviation
and communication systems.  Holt Statement of Undisputed
Material Facts, ECF 118-2 ("Holt SUMF") ¶ 1.  On May 1, 2013,
the parties entered into the Distribution Agreement.  Holt SUMF
¶ 12; ECF 1 Ex. A.  At the time, plaintiff was a New York entity
and defendant a California entity.  Holt SUMF ¶ 1, 3-4.  The
Distribution Agreement provided plaintiff "the non-exclusive
right to purchase products from [defendant] at distributor
prices for resale to others" in India.  Distribution Agreement ¶
1.  Each party retained the right to "terminate th[e] agreement
at any time, with or without cause, by giving written notice of
termination to the other party no less than thirty (30) days
prior to the effective date of termination."  Id. ¶ 4.

In the Distribution Agreement, defendant agreed to provide
plaintiff with promotional materials at no cost, and plaintiff
agreed to promote the sale of defendant's products.  Id. ¶ 3-4.
The Distribution Agreement "constitute[d] the entire
understanding of the parties as to the subject matter [t]hereof"
and could not be modified except in a writing signed by an
authorized representative of each of the parties.  Id. ¶ 9.

After the parties entered into the Distribution Agreement, plaintiff moved its principal place of business to Connecticut. Holt SUMF ¶ 3-4.  Defendant has remained a California entity. Id. ¶ 1.

In February 2019, defendant entered into a distribution agreement with Tecnomic Components Ovt. Ltd ("Tecnomic") covering the territory of India.  Id. ¶ 51.  Defendant thereafter began routing customer inquiries to Tecnomic.  Id. ¶ 53.  Plaintiff alleges that many of those inquiries were initially generated by its marketing efforts.  Bryka Statement of Undisputed Material Facts, ECF 128-1 ("Bryka SUMF") ¶ 82.

In November 2019, defendant provided plaintiff 30 days' notice it was terminating the Distribution Agreement.  Holt SUMF ¶ 53-54.  From June 7, 2019 to February 21, 2020, plaintiff ordered $60,065.81 of products from defendant.  Holt SUMF ¶ 56. Defendant delivered the products and plaintiff accepted them, but plaintiff has not paid for the products.  Id. ¶¶ 58-59.

II.  Legal Standard

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . .  show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

56(a)).  To avoid summary judgment, plaintiff must point to evidence that would permit a jury to return a verdict in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether there is a genuine issue of material fact, the record must be viewed in a manner most favorable to plaintiff.  Id. at 255.  However, conclusory allegations, conjecture, and speculation are insufficient to create a genuine dispute of material fact.  Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).

III. Discussion

    A.  Plaintiff's Claims

        i.  Connecticut Franchise Act

Plaintiff claims that defendant violated the CFA by terminating the Distribution Agreement with insufficient notice, without cause, and in bad faith.  The CFA applies to "franchise agreements . . . , the performance of which contemplates or requires the franchisee to establish or maintain a place of business in this state."  Conn. Gen. Stat. § 42-133h.  I conclude that the Distribution Agreement is not a "franchise agreement" within the meaning of the statute.[1]

The CFA defines "franchise" as:

"[A]n oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage

_____

[1] In view of this conclusion, I do not reach the disputed issue of whether the Distribution Agreement "contemplated" plaintiff's presence in Connecticut.

> in the business of offering, selling or distributing
> goods or services under a marketing plan or system
> prescribed in substantial part by a franchisor . . .;
> and (2) the operation of the franchisee's business
> pursuant to such plan or system is substantially
> associated with the franchisor's trademark, service
> mark, tradename, logotype, advertising or other
> commercial symbol designating the franchisor or its
> affiliate . . . ."

Conn. Gen. Stat. § 42-133e(b) (emphasis added).  Thus, for plaintiff's claim to survive summary judgment, a jury must be able to find that (1) plaintiff operated its business under a marketing plan prescribed in substantial part by defendant, and (2) the operation of plaintiff's business was substantially associated with defendant's trademark.

The first requirement focuses on the level of a franchisor's control over a franchisee's marketing.  Hartford Elec. Supply Co. v. Allen-Bradley Co., 736 A.2d 824, 834 (Conn. 1999).  Courts consider whether the franchisor has control over the franchisee's "(1) hours and days of operation; (2) advertising; (3) lighting; (4) employee uniforms; (5) prices; (6) trading stamps; (7) hiring; (8) sales quotas; and (9) management training."  Id.  Courts also consider whether "the franchisor provided the franchisee with financial support, audited its books, or inspected its premises."  Id.

The record shows that defendant exercised no control over most of these factors.  It did not dictate plaintiff's hours and days of operation, lighting, employee uniforms, pricing, sales

quotas, or trading stamps.  Holt SUMF ¶¶ 31-32, 34, 37-38.  Nor
did it provide plaintiff financial support, audit its books, or
inspect its facilities.  Bryka SUMF ¶¶ 35, 39-40.

In addition, the record shows, defendant exercised little
control over the other factors.  It required training of
marketing personnel "in the function and uses of [its] products
and technology in order to properly present the products to
potential customers," Bryka SUMF ¶ 59; required plaintiff to
hire a "field application engineer," Bryka SUMF ¶ 58; and
expected plaintiff to submit monthly reports concerning its
engagement with potential customers on a list provided by
defendant.  Bryka SUMF ¶ 57.  These factors, although relevant
to the first requirement,  are insufficient to support a
reasonable finding that plaintiff operated under a marketing
plan prescribed in substantial part by the defendant, especially
since defendant's business accounted for only a fraction of
plaintiff's annual revenue.  Holt SUMF ¶ 47.

The evidence is similarly insufficient to satisfy the
second requirement.  For the operation of a business to be
"substantially associated" with a defendant's trademark within
the meaning of the CFA, the sale of the defendant's products
must comprise "most or all" of the plaintiff's business.  Grand
Light and Supply Co. v. Honeywell, Inc., 771 F.2d 672, 677-78
(2d Cir. 1985); see B & E Juices, Inc. v. Energy Brands, Inc.,

No. 3:07cv1321 (MRK)(WIG), 2007 WL 3124903, at *10, *12 (D. Conn. 2007)(applying the "most or all" standard to find that no franchise relationship existed when the defendant's business accounted for approximately 30-40 percent of the plaintiff's revenue); Rudel Machinery Co., Inc. v. Giddings & Lewis, Inc., 68 F. Supp. 2d 118, 124 (D. Conn. 1999) (applying the "most or all" standard to find that no franchise relationship existed when the defendant's business accounted for 41 percent of the plaintiff's revenue).  Plaintiff's own figures suggest that sale of defendant's products accounted for, at most, 27.7 percent of its revenue between 2014 and 2018.  Holt SUMF ¶ 47.

Plaintiff submits that revenue from sales of defendant's products constituted one hundred percent of its business within a specific market – the sale of data transfer and receipt products to the aerospace market in India.  Bryka SUMF ¶ 20. But no case law has been cited or found to support a market-specific analysis, rather than a percentage-of-total-revenue analysis.  Courts have declined to conduct such a piecemeal approach.  See, e.g., Grand Light & Supply Co., 771 F.2d at 676-77 (considering the percentage of the franchisee's entire business that was driven by the distribution relationship).

Plaintiff points out that, in 2014, 65 percent of its overall revenue derived from sale of defendant's products.[2] Holt Ex. 13.  But this year-by-year analysis suffers from the same piecemeal infirmity as plaintiff's market-specific analysis.  The "most or all" test discounts year-by-year fluctuations and instead measures revenue-generation over the duration of the agreement.  See Rudel Machinery, Co., 68 F. Supp. 2d at 126 (measuring revenue-generation as an average over the course of the contractual relationship instead of year-by-year figures).

    ii.  Breach of Contract

Plaintiff claims that defendant breached the Distribution Agreement by treating plaintiff's distribution rights under the Agreement as non-exclusive.[3]  However, as stated above, the Agreement expressly granted plaintiff a "non-exclusive right to purchase Products from [defendant] at distributor prices for resale to others within [India]."  Distribution Agreement ¶ 1.

Under Connecticut law, when the terms of a contract are "clear and unambiguous," determination of the parties' intent is a question of law.  Prysmian Cables & Sys. USA, LLC v. ADT Com.,

---

[2] The same data indicates that Holt accounted for only 8 percent of Bryka's business in 2017, 9 percent of Bryka's business in 2018, and 13 percent of Bryka's business in 2015. During no other year did Holt's sales account for over (or near) 50% of Bryka's business.  Ex. 13.
[3] Plaintiff also claims that defendant breached the Agreement by terminating it on 30 days' notice in violation of the CFA.  Because the CFA does not apply, this claim is ill-founded.

LLC, 3:22-cv-836 (VAB), 2023 WL 2712613, at *4 (D. Conn. 2023)
(quoting Nation-Bailey v. Bailey, 112 A.3d 144, 151 (Conn.
2015).[4]  "A contract is unambiguous when its language is clear
and conveys a definite and precise intent."  United Illuminating
Co. v. Wisvest-Connecticut, LLC, 791 A.2d 546, 550 (Conn. 2002).
When the language itself is certain, "[t]he court will not
torture words to impart ambiguity."  Downs v. Nat'l Cas. Co.,
152 A.2d 316, 319 (Conn. 1959).

Plaintiff contends that the provision quoted above is
ambiguous in that it could be interpreted to confer a non-
exclusive right to purchase but an exclusive right to resell.  I
disagree.  If the parties intended to limit the modifier "non-
exclusive" to the right to purchase, while conferring an
exclusive right to resell, they presumably would have done so.
And they easily could have done so simply by stating: "Bryka
shall have the non-exclusive right to purchase products from
Holt, and an exclusive right to resell those Products to others
within [India]."  Giving the words used by the parties their
everyday meaning, the provision is unambiguous: plaintiff's
right under the Distribution Agreement to purchase for resale
was non-exclusive.

---

[4] Both parties rely on Connecticut law.

Plaintiff points to the parties' course of dealing to show
that it had an exclusive right to resell in India.  Plaintiff
highlights the following facts: before entering into the
Distribution Agreement, plaintiff had been defendant's "sole"
distributor in India, Compl. ¶ 16; "[defendant] routinely
represented to various organizations that [plaintiff was] its
authorized distribution partner in India for all products
manufactured by [defendant]," id. ¶ 51; and, "[a]s recently as
2018, [defendant] represented to an organization that
[plaintiff] "is an authorized and exclusive distributor for
products manufactured and offered by Holt Integrated Circuits
for the territory of India.'"  Id. ¶ 52.

When, as here, the terms of a contract are unambiguous,
extrinsic evidence will not suffice to support a contradictory
meaning.  See Hartford Accident & Indem. Co. v. Ace Am.
Reinsurance Co., 936 A.2d 224, 240 (Conn. 2007); HLO Land
Ownership Assocs. Ltd. v. City of Hartford, 727 A.2d 1260, 1264-
65 (Conn. 1999).  Moreover, plaintiff's former status as the
sole distributor in India and defendant's representations to
others do not support a reasonable finding that, when the
parties adopted the non-exclusivity provision in the
Distribution Agreement, they actually intended to grant
plaintiff an exclusive right to resell.

iii. <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiff claims that defendant breached the covenant of good faith and fair dealing by selling products to customers in India through other distributors.  I conclude that the evidence is insufficient to support this claim.

Under Connecticut law, a duty of good faith and fair dealing is implied into every contract.  See <u>Hoskins v. Titan Value Equities Grp.</u>, 749 A.2d 1144, 1146 (Conn. 2000) ("It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship."); <u>see also</u> 2 Restatement (Second), Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").  The covenant protects parties from being deprived of benefits they "reasonably expected to receive under the contract."  <u>De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.</u>, 849 A.2d 382, 388 (Conn. 2004) (citation omitted).  A claim for breach of the covenant "must be tied to an alleged breach of a specific contract term."  <u>Geysen v. Securitas Sec. Services USA, Inc.</u>, 142 A.3d 227, 237 (Conn. 2016) (quoting <u>Landry v. Spitz</u>, 925 A.2d 334, 344 (Conn. App. Ct. 2007); <u>see Richards v. Direct Energy Services, LLC</u>, 246 F. Supp. 3d 538, 557 (D. Conn. 2017).  The covenant "cannot be applied to achieve

a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Magnan v. Anaconda Indus., Inc., 479 A.2d 781, 786 (Conn. 1984).

Many of the facts relevant to this count are undisputed. While the Distribution Agreement was in effect, defendant made sales in India through other distributors totaling $300,000. Bryka SUMF ¶ 73.  And it executed the agreement with Tecnomic with the intention to "route everything" to Tecnomic.  Bryka SUMF ¶¶ 74, 76.  Subsequently, it made significant sales through Tecnomic.  SUMF ¶ 81.  Many of these sales were made to customers plaintiff considered its own, either because of its marketing efforts with the buyers or because of past sales to them.  Bryka SUMF ¶¶ 79, 82.

For plaintiff's claim to survive summary judgment, the evidence must support a finding that plaintiff reasonably expected to profit from sales to these buyers.  Defendant contends that the evidence is insufficient.  I agree.

Plaintiff contends that defendant made sales through other distributors to seven buyers who were "[plaintiff's] customers." Bryka SUMF ¶ 82.  For three of the buyers, the only evidence that suggests they were "plaintiff's customers" is an internal spreadsheet prepared by plaintiff captioned "Lost Business." Id.  Plaintiff provides no evidence of efforts on its part to make the sales in question, how close it came to making sales,

or what its role was in each buyer's purchasing decision.  For the other four buyers on the list, plaintiff offers evidence that it previously made sales to them.  But the evidence does not support a finding that it was reasonable for plaintiff to expect to make the sales at issue.

The insufficiency of the evidence to support plaintiff's claim is illustrated by a 2018 sale to Hindustan Aeronautics Limited ("HAL"), which was a significant customer.  Plaintiff contends that it began marketing defendant's products to HAL in 1998, and that its efforts culminated in a 2008 purchase order.  Bryka SUMF ¶ 32.  In 2018, HAL purchased defendant's products through another distributor, and defendant accepted the purchase order.  Bryka SUMF ¶ 70.

The evidence does not support a finding that defendant's acceptance of the HAL purchase order violated the covenant of good faith and fair dealing.  As discussed above, the Distribution Agreement expressly granted defendant the right to accept purchase orders from other distributors.  Plaintiff points to a presentation made by the defendant encouraging plaintiff to engage with HAL and asserts that it "invested significant resources in marketing and developing potential sales opportunities."  Bryka SUMF ¶ 86.  But the evidence fails to show that plaintiff contributed to procuring the sale in 2018.

iv.   Unjust Enrichment

Plaintiff claims that defendant was unjustly enriched by routing to Tecnomic purchase orders that plaintiff's marketing efforts generated.  However, plaintiff has not shown that defendant was thereby unjustly enriched. The doctrine of unjust enrichment provides an equitable remedy for a plaintiff when "it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." Schleicher v. Schleicher, 182 A. 162, 164 (Conn. 1935).  To prevail on this claim, plaintiff must prove three elements: (1) that the defendant benefited, (2) that the defendant unjustly did not pay plaintiff for the benefit, and (3) that the failure of payment was to plaintiff's detriment. Vertex, Inc. v. City of Waterbury, 898 A.2d 178, 190 (Conn. 2006) (citation omitted).  The evidence does not support a finding that defendant benefited by making sales through Tecnomic rather than plaintiff.  To the contrary, the parties agree that defendant did not charge  Tecnomic more for parts than it charged plaintiff.  Bryka SUMF ¶ 52.

v.   Tortious Interference with Business Relations

Plaintiff alleges that defendant tortiously interfered with plaintiff's business relations by diverting customers to other distributors.  To prevail on this claim, plaintiff must prove "defendant's intentional [and wrongful] interference" with a

14

business relationship.  Am. Diamond Exch., Inc. v. Alpert, 28 A.3d 976, 986 (Conn. 2011).  To be actionable, the interference must be "wrongful by some measure beyond the fact of the interference itself."  Blake v. Levy, 464 A.2d 52, 55 (Conn. 1983) (citation omitted).  "This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously."  Daley v. Aetna Life & Cas. Co., 734 A.2d 112, 135 (Conn. 1999) (citation omitted).  Plaintiff's claim fails because such proof is lacking.

In assessing tortious interference claims, Connecticut courts look to the Restatement (Second) of Torts, which lists the following factors: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties."  Restatement (Second) of Torts § 767 (1979).

As briefed by the parties, the issue is whether the evidence supports a finding that defendant had an improper motive for diverting customers to Tecnomic.  Plaintiff alleges

three potential motives for the alleged interference: "[(1)] to bolster Tecnomic's relationships with Bryka's customers, [(2)] to force Bryka out of the Indian market, and [(3)] to benefit Holt through increased revenues." Compl. ¶ 99.  The evidence is insufficient to support a finding of any such improper motive.

As to the first, plaintiff has stipulated that "{Defendant] sold $331,503.85 of its products to end users in India through channels other than [plaintiff] and Tecnomic."  Bryka SUMF ¶ 73. This stipulation cuts against a finding that defendant's alleged interference was motivated by a desire to substitute Tecnomic for plaintiff.  As to the second, the evidence does not support a finding that defendant wanted to eliminate plaintiff from the market in India or believed the alleged interference would have that effect.  As to the third, there is no evidence defendant offered Tecnomic or other distributors more favorable terms.

vi.  <u>Violation of Connecticut Unfair Trade Practices Act</u>

Plaintiff contends that defendant violated CUTPA by terminating the Agreement and diverting customers to Tecnomic.  Thus, the CUTPA claim is based on the same allegations as a breach of contract claim.  Because the evidence is insufficient to prove a breach of contract, the CUTPA claim "necessarily must fail."  <u>Elm Street Builders, Inc. v. Enter. Park Condo. Ass'n</u>, 778 A.2d 237, 245 (Conn. App. Ct. 2001). <u>See</u> <u>Halkiotis v. WMC Mortgage Corp.,</u> 144 F.

Supp. 3d 341, 360 (D. Conn. 2015); <u>Omni Corp. v. Sonitrol</u>
<u>Corp.</u>, 303 Fed. Appx. 908, 911 (2d Cir. 2008); <u>see also</u>
<u>Ramirez v. Health Net of Ne., Inc.</u>, 938 A.2d 576, 591
(Conn. 2008) ("[T]he plaintiff's claims [under CUTPA] fail
as a matter of law because he has alleged nothing more than
that, in terminating his membership, the defendant had
availed itself of the rights afforded under the plain and
unambiguous terms of the agreement.").

   B.  <u>Defendant's Counterclaim</u>

   Defendant contends that plaintiff's failure to pay for the
products it ordered in 2019-20 constitutes a breach of contract.
The parties have stipulated that plaintiff ordered $60,065.81 of
products and agreed to pay for them.  Bryka SUMF ¶¶ 56-58.  The
parties have also stipulated that defendant performed the
contract by delivering the products.  <u>Id.</u> ¶¶ 58-59.  Defendant
contends that these stipulations entitle it to summary judgment.

   Plaintiff responds that its obligation to pay is excused by
defendant's breach of contract.  However, the evidence does not
support a finding that defendant has breached the Distribution
Agreement.  Plaintiff also raises defenses of laches, waiver,
estoppel, prevention, impossibility, frustration,
impracticability of performance, and failure to mitigate.  But
it has not demonstrated that any of these defenses enables it to
avoid summary judgment.

IV.  <u>Conclusion</u>

Accordingly, the motion for summary judgment is hereby granted in full.  Judgment may enter dismissing the claims in the complaint and awarding damages to defendant on the counterclaim in the amount of $60,065.81.

So ordered this 23rd day of September 2024.

_____
/RNC/
Robert N. Chatigny
United States District Judge
